**Anne LEACH, Plaintiff,**

v.

**F.A. BARTLETT TREE EXPERT CO., Defendant.**

**No. 3:00 CV 1175 (GLG).**

United States District Court, D. Connecticut.

Sept. 5, 2000.

Anne Goldstein, Gregg D. Adler, Deborah L. McKenna, Livingston, Adler, Pulda & Meiklejohn, Hartford, CT, for Anne Leach.

Anessa Abrams, Schmeltzer, Aptaker, & Shepard, Washington, DC, John J. Louizos, Curtis, Brinckerhoff & Barrett, Stamford, CT, for F.A. Bartlett Tree Expert Co. Inc.

### MEMORANDUM DECISION

GOETTEL, District Judge.

Defendant has moved to dismiss four of the five counts in plaintiff's complaint. The complaint is essentially brought under the Federal Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-54. However, like most employment discrimination cases, the complaint has been expanded by four additional state law claims. The defendant has moved to dismiss only these four "soft" claims.

The facts as stated in the complaint appear to be as follows. Plaintiff had been employed by the defendant for eleven years and had been promoted to the position of assistant vice president. At the beginning of 1998, she suffered from gall bladder problems. Initially, she claims that she offered to resign but she decided instead to take a medical leave of absence from work pursuant to the Family and Medical Leave Act. In July of 1998, she began a leave of absence. At the end of October when the leave period was expiring, she requested a one-month extension in order to have surgery. After some correspondence, discussed below, she withdrew her request for an extension and said she would return to work on November 9, 1998, within the allowable one hundred twenty day medical leave. When she arrived at work, she was asked to leave since the company says that it did not want her to return to work until it conducted its own review of her fitness. After some haggling, the plaintiff agreed to allow the company's physician to review her medical history, which they did over the next three months. In February of 1999, it accused the plaintiff of fraudulently conceiving or continuing her medical leave. Plaintiff denied these accusations. On March 15, 1999, the defendant informed the plaintiff that she had been terminated because "there is substantial medical evidence that, had you been reinstated at the conclusion of your leave, or if you were reinstated now, that you would continue to have an unacceptable level of absences, as you had before your leave."

The four subject counts of the complaint arise because of two letters written by the defendant during the period of the plaintiff's medical leave. In a letter dated July 23, 1998, the defendant wrote:

> Your leave will remain in effect for 120 days or until you return to work, whichever occurs first. Please note that if you are unable to return by the end of the 120-day leave, your employment will be terminated.

Then on November 2, 1998, the defendant wrote another letter telling the plaintiff her leave would expire on November 9, but it would grant additional unpaid leave that she had requested although

> we cannot guarantee that you would be returned to the same or an equivalent position at the end of the extended leave. Assuming that you were fit for duty and released for return to work by both your physician and by the Company's physician on or before December 1, 1998, your reinstatement would be at the discretion of the Company, based upon its needs.

As noted above, the company also wanted further medical documentation and an independent medical review, claiming that her attendance had been erratic and her absences excessive. This resulted in the plaintiff returning to work without the extension.

Based on the letters quoted above, the plaintiff maintains that a contract was formed requiring the defendant to allow her to return to work after her medical

232

leave of absence. The letters, according to the plaintiff, modified what had been employment at will status and created an enforceable contractual term. According to the plaintiff, she was no longer an employee at will and could be terminated only for cause, so that the termination of her employment violated her contract.

We do not believe the letters establish a contract of employment for a specified time or an indefinite term, although they may have created other rights with respect to her return from leave. Indeed, the two letters limit the defendant's exposure and specifically state that the plaintiff's return to work could not be guaranteed and would be left to the company's discretion. Therefore, the motion to dismiss Count One is granted.

Count two is based on a claim of a breach of the implied covenant of good faith and fair dealing in the employment contract. Since we have found that there was no employment contract, there could not be an implied covenant of good faith and fair dealing as to continued employment. The defendant's actions may have been in violation of the Family and Medical Leave Act as claimed in Count Five. If so, that cause of action controls, rather than a purported contract requiring good faith and fair dealing. Consequently the motion is granted as to the second cause of action.

The third cause of action is a claim of promissory estoppel. Plaintiff maintains that she was induced to rely on a promise of continued employment if she took (or abstained from taking) certain steps as set forth in the defendant's letters. Defendant argues that it made no promises which could reasonably have been expected to induce reliance. While the pleadings are a bit murky and the ultimate result of the claims uncertain, we find that the claim of promissory estoppel under the rather unusual circumstances of this case is sufficiently stated, at least with respect to the plaintiff's right not to be terminated at the conclusion of her medical leave (in fact, she was not terminated for some months thereafter), as to deny the motion to dismiss.

The fourth cause of action is the now customary infliction of emotional distress claim which is appended to most employment discrimination claims. Defendant alleges that the emotional distress claim must arise out of the termination process alone, a position with which we have agreed in earlier decisions. *See, e.g., Fonseca v. RBC Heim Bearings Corp.*, 87 F.Supp.2d 137, 139–40 (D.Conn.2000); *Rapkin v. Rocque*, 97 F.Supp.2d 244, 246 (D.Conn.2000).

The Second Circuit, in reversing one of our earlier decisions on another issue (indeed, one that had not even been raised in the District Court), stated in *dicta* that the question of whether a negligent infliction of emotional distress claim can arise outside of the termination of employment is still an open question under Connecticut law. *Malik v. Carrier Corp.*, 202 F.3d 97, 103–04 n. 1 (2d Cir.2000). Concededly, the Connecticut state courts continue to wrestle with this issue.

The decision on this issue is made more difficult in this case because it is unclear when the termination process began. From the plaintiff's standpoint, the various letters written earlier on were aimed toward ultimately terminating her. Obviously, the jury's conclusion as to whether emotional distress was inflicted (beyond the mere fact of termination of the plaintiff's employment) will depend upon the jury's interpretation of the evidence. Under these circumstances we do not believe we should dismiss the fourth cause of action.

In conclusion we **GRANT** the motion to **DISMISS Counts One and Two, [Doc. #6]** but with leave to amend, and **DENY** the motion to **DISMISS Counts Three and Four.**